G. T. GRAY v. STATE.

No. A-4439.    Opinion Filed May 26, 1924.

(225 Pac. 994.)

(Syllabus.)

**Intoxicating Liquors—Evidence not Sustaining Conviction for Sale.**
See opinion for evidence held to be insufficient to justify a
conviction for the unlawful sale of intoxicating liquor.

Appeal from County Court, Pittsburg County; S. F.
Brown, Judge.

G. T. Gray was convicted of the unlawful sale of liquor.
and he appeals. Reversed.

Geo. M. Porter and J. L. Fuller, for plaintiff in error.

George F. Short, Atty. Gen., and G. B. Fulton, Asst. Atty.
Gen., for the State.

DOYLE, J.  The information in this case charges G. T.
Gray with the unlawful sale of one-half pint of whisky to
one Isaiah Pickens.  The trial resulted in a verdict finding
the defendant guilty, and fixing his punishment at confine-
ment in the county jail for three months and a fine of $200.
He has appealed from the judgment rendered upon such
conviction.

The only question presented is whether the conviction is
supported by the evidence.

The sole witness for the state was Isaiah Pickens, a full-
blood Indian, who testified:

"I saw G. T. Gray sitting in his car.  He motioned to
me, and said, 'to come to his office, he had something to
drink.'  I got in the car, and Sam Moore came along.  I
made a motion to Sam Moore to come on and he got in the
car.  We went to Dr. Gray's office.  We ordered corn whis-
ky.  He left and came back in about 30 minutes with a
half pint.  I paid him $1.50, and Sam Moore paid him $1.50

for the whisky. We drank it right in the office. I took the first drink, nearly half of it, and Sam Moore drank the rest, and we left the office about 10 o'clock in the forenoon. I got drunk, and when I got sober I was in jail. I do not know who arrested me, and I don't know where I was when I signed this complaint against Dr. Gray. I did not talk to anybody about this case before I signed the complaint. I told them that Dr. Gray sold me the whisky, and they agreed to let me off if I signed the complaint.''

On the part of the defendant, Sampson Moore testified:

''I saw Isaiah Pickens and Dr. Gray sitting in a car. Isaiah told me to get in and ride; that he was going up to Dr. Gray's office; that he had been drunk the day before and had the hiccoughs, and wanted to get some medicine. Dr. Gray went in the little room and fixed up some medicine and came out with a little bottle and give it to Isaiah, and he drank it up. It was about 10 o'clock. We walked out and went up Choctaw avenue to a choc joint. Isaiah bought some choc, and we drank it; then went to Jones' restaurant, and got some barbecue; then we went back to the choc joint, and both of us got drunk. The next day Isaiah said he got arrested.''

S. Jones testified that Isaiah Pickens and Sampson Moore came to his place about 12 o'clock and asked if the meat was ready; that neither appeared to be intoxicated, and after eating they went down the street, and they came back about 2:30 that afternoon, and they seemed to be pretty drunk. Sampson Moore laid down and went to sleep, and Pickens staggered on towards town.

Three or four other witnesses testified that they saw Pickens and Moore that day in Shield's joint drinking choc beer.

As a witness in his own behalf, G. T. Gray testified:

''I had just paid my bill at the electric light office. I met Pickens; he was hiccoughing, and asked if I could stop

it. I said, 'Yes; come on.' He got in the car, and called Sampson Moore to come with us. I fixed up some medicine to relieve him. It was a 4-ounce bottle containing simple syrup and 8 drops each of belladonna and Pacific tincture of lobelia. I charged him $1.50. He paid me $1.25, saying that was all he had.''

The cases are rare in which this court interferes to disturb the judgment of the trial court, and it is only in a case where the verdict is clearly contrary to the evidence, or where, from the doubtful character of the evidence against the defendant and the preponderance in his favor, is such that it is evident that the jury were influenced by passion or prejudice, that a judgment will be reversed because the evidence is insufficient to sustain it. De Freece v. State, 9 Okla. Cr. 689, 133 Pac. 254.

We think it would be destroying the presumption which arises in favor of the innocence of the accused and permitting the subversion of the rule which requires the establishment of guilt beyond a reasonable doubt to allow this conviction to stand.

The judgment of the trial court is therefore reversed.

MATSON, P. J., and BESSEY, J., concur.